UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-60967-CIV-COHN/SELTZER

AMERISURE MUTUAL INSURANCE
COMPANY, and AMERISURE
INSURANCE COMPANY,

    Plaintiffs,

vs.

AMERICAN CUTTING & DRILLING CO.,
INC., CPD HOLDINGS, LLC, VERANDA
CONDOMINIUM I, LLC, and COSCAN
CONSTRUCTION, LLC,

    Defendants.
_____/

### ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY DECLARATORY JUDGMENT

THIS CAUSE is before the Court upon Amerisure Mutual Insurance Company's and Amerisure Insurance Company's (collectively "Amerisure") Motion for Summary Declaratory Judgment [DE 35]. The Court has considered the Motion for Summary Judgment, Coscan Construction, LLC's ("Coscan") Response [DE 63], American Cutting & Drilling, Co.'s and CPD Holdings, LLC's (collectively "American Cutting") Response [DE 59], Veranda Condominium I, LLC's ("Veranda") Response [DE 51], Amerisure's Reply [DE 68], oral argument on March 5, 2009, and is otherwise advised in the premises.

### I. BACKGROUND

Coscan was either the general contractor or construction manager on a construction project of multi-height and story condominiums on a piece of real property owned by

1

Veranda. (Pretrial Stipulation, DE 86, p. 5.)   During the construction of the Veranda Condominiums, American Cutting was hired to cut/chip[1] plumbing access holes in the post tension concrete floors. (Amerisure Motion for Summary Judgment, DE 35, p. 3; American Cutting Response, DE 59, p. 3.) The work was performed from February 3, 2007 through March 14, 2007. (Id.) On March 16, 2007, the city required construction of the Veranda Condominiums to stop as a result of cut and nicked post tension cables.  (Pretrial Stipulation, DE 86, p. 6.) At the time the construction project was flagged, the project was not complete. (Amerisure Motion for Summary Judgment, DE 35, p. 4; American Cutting Response, DE 59, p. 3; see also Coscan Construction Letter, Ex. E to Bruce Pender  DE 39-2)

Coscan notified American Cutting on March 19, 2007 that a number of post tension cables throughout the Veranda Condominiums were broken as a result of core drilling, hammer drilling, and chipping at slabs by multiple contractors including American Cutting. (Amerisure Motion for Summary Judgment, DE 35, p. 4; American Cutting Response, DE 59, p. 3.) Thereafter, Veranda would not allow American Cutting back on the project. (American Cutting Response, DE 59, p. 3.)   American Cutting filed a Claim of Lien for unpaid amounts. (Claim of Lien, Exhibit C, DE 1-2, p. 56.) On June 18, 2007, American Cutting commenced foreclosure proceedings in the Circuit Court of the 17th Judicial Circuit, in and for Broward County ("State Court Action"). (Pretrial Stipulation, DE 86, p. 5.)

---

[1] In their Pretrial Stipulation Plaintiffs indicate that American Cutting was hired to chip/cut concrete and American Cutting states that it was hired to chip concrete. (Pretrial Stipulation, DE 86, p. 5.)

In the State Court Action, Veranda filed a counterclaim against American Cutting asserting negligence and a statutory civil action under Fla. Stat. § 553.84 for violation of the Florida Building Code. (Amended Counterclaim[2], DE 53-3.) In the negligence cause of action Veranda alleges that American Cutting was on the property for the sole purpose of cutting through concrete and was not supposed to cut any steel or other cables. (Id. at p. 1.) However, while on the property, American Cutting caused steel cables to be severed or damaged. (Id. at p. 2.) Cutting the steel cables breached American Cutting's duty to only cut holes in the concrete and did not comply with reasonable and customary standards. (Id.) The negligence cause of action avers that Veranda incurred substantial damage as a result of American Cutting's actions severing the cables. The alleged damages includes, but is not limited to, "the cost of repairing and replacing the cables; the cost of breaking through walls and floors to gain access to the cables that needed to be replaced and repaired, and the cost of overtime required by the delays caused by the severed cables." (Id.) The Statutory Civil Action under Florida Statute §553.84 also deals with the severed cables. Veranda alleges that American Cutting committed a violation of the Florida Building Code and created an unsafe condition when it cut the cables, which resulted in inspectors stopping work on the building being constructed. (Id.) Cutting the cables violated the Florida Building Code by creating conditions dangerous to the public health, safety and welfare; endangering the structural strength and stability of the building; and endangering life and property from hazards attributed to the built environment. (Id. at

---

[2] American Cutting asserts that the Motion for Summary Judgment should be denied as moot because the complaint is based on a counterclaim that was amended. The Court has been provided with the amended counterclaim and will conduct its analysis pursuant to the allegations included therein.

p. 3.) Veranda alleges that American Cutting knew or should have known that the violation existed and the violation caused the cessation of work resulting in substantial damage to Veranda, including but not limited to the cost of repairing and replacing the cables; the cost of breaking through walls and floors to gain access to the cables that needed to be replaced and repaired; and the cost of overtime required by the delays caused by the inspectors preventing work from being done. (Id. at p. 4.)

Amerisure Mutual Insurance Company issued a Commercial General Liability ("CGL") policy, policy number CPP1311294080006, to American Cutting and CPD as named insureds. Amerisure Insurance Company also issued a policy of Umbrella Liability Insurance, policy number CU-2035724-01, to American Cutting and CPD as named insureds. Amerisure tendered a defense to American Cutting in the State Court Action under a reservation of rights. (American Cutting Response, DE 59, p. 1.) Amerisure then filed this declaratory judgment seeking a declaration that it has no duty to indemnify or defend American Cutting or any insured in the State Court Action because of exclusions j(5) and j(6) in the CGL policy and exclusions m(5) and m(6) in the Umbrella policy.

Exclusions j(5) and j(6) in the CGL policy are identical to m(5) and m(6) in the Umbrella policy. The pertinent exclusions state:

> j.  Damage to Property
>
>   (5)  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>   (6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

4

> \* \* \*
>
> Paragraph (6) of this exclusion does not apply to "property damage" included in the "products completed operations hazard".
>
> \* \* \*
>
> I.  Damage to Your Work
>     "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
>
>     This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(CGL Policy, DE 36-3, p.73- 74.) The products - completed operations hazard is defined in the CGL Policy as:

> a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
>     \* \* \*
>
>     (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
>
>         (a) when all of the work called for in your contract has been completed.
>         (b) when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>         (c) when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
>         Work that may need service, maintenance, correction, repair or replacement, but

>> which is otherwise complete, will be treated as completed.

(CGL Policy, DE 36-3, p. 83.) Property damage is defined as:

> a. Physical injury to tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(CGL Policy, DE 36-3, p. 83 - 84.) In the CGL Policy, your work means:

> (1) work or operations performed by you or on your behalf; and
> (2) materials, parts or equipment furnished in connection with such work or operations.
>
> b. includes
>
> (1) warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and
> (2) the providing of or failure to provide warnings or instructions.

(CGL Policy, DE 36-3, p. 84.)

## II. ANALYSIS

### A. Motion for Summary Judgment

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For example, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [then] there is 'no genuine issue for trial.'"

Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When making this determination, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997).

Additionally, "[w]here the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted." Navarro v. Broney Automotive Repairs, Inc., 533 F. Supp. 2d 1223, 1225 (S.D.Fla. 2008), aff'd 2008 WL 2315869 (11th Cir. 2008) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). According to the plain language of Fed. R. Civ. P. 56(e), "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. at 249-50.

### B. Duty to Defend/ Indemnify

The duty to defend is based entirely "on the facts and legal theories alleged in

the pleadings and claims against the insured." James River Ins. Co. v. Ground Down Engineering, Inc., 540 F.3d 1270, 1275 (11th Cir. 2008) (internal quotation and citation omitted).³  The duty to defend does not hinge on the true facts of the cause of action against the insured, the insured's version of the facts, or the insured's defenses. State Farm Fire and Casualty Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004).  The Court must look to the most recent amended pleading and "[i]f the allegations in the complaint state facts that bring the injury within the policy's coverage, the insurer must defend regardless of the merits of the lawsuit." Id.  Any doubt about the duty to defend must be resolved in favor of the insured. Id.  If the Court determines that there is no duty to defend, then there is no duty to indemnify as the duty to defend is much broader than the duty to indemnify. Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Association, Inc., Case No. 08-10060-CIV, 2009 WL 230003, *3 (S.D. Fla. January 22, 2009).  To make a determination regarding Amerisure's duty to defend in the State Court Action, the Court must apply the language of the Policy to the facts alleged in the counterclaim.

### C. The CGL Policy

The CGL policy is designed to protect an insured against "certain losses arising out of business operations." U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So.2d 871, 877 (Fla. 2007).  CGL policies have, over the years, expanded the insuring agreement and narrowed exclusions. Id. at 878.  CGL policies provide coverage "not only for accidental events, but also injuries or damage neither expected nor intended from the

---

³ Since this is a diversity case, Florida law applies. Hartford Acc. & Indem. Co. v. Beaver, 466 F.3d 1289, 1291 (11th Cir.2006); Pretrial Stipulation, DE 86, p. 8.)

8

standpoint of the insured." Id. at 883. The sole issue before the Court is whether the policy exclusions apply.

Exclusions function to restrict and shape the coverage otherwise afforded. Id. at 882. The exclusions at issue are "business risk exclusions." Id. at 878. As the Florida Supreme Court observed, CGL policies generally do not cover contract claims arising out of the insured's defective work or product because of the operation of the business risk exclusions. Id. at 885, quoting Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 673 N.W.2d 65, 76 (2004). As a result, the Court will look to exclusions j(5) and j(6) of the CGL policy to determine whether they exclude coverage.

### D. Ambiguity of the Exclusions

In Florida "an insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed liberally in favor of the insured and strictly against the insurer." Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828, 830 (Fla.1997). If there is an ambiguity in an insurance policy, that ambiguity should be construed against the insurer. Purrelli v. State Farm Fire & Cas. Co., 698 So.2d 618, 620 (Fla. 2d DCA 1997). An insurance policy is ambiguous "if it is susceptible to two or more reasonable interpretations that can fairly be made." Cont'l Cas. Co. v. Wendt, 205 F.3d 1258, 1261 (11th Cir.2000). Florida courts have made clear that it is only when there is a genuine inconsistency or ambiguity in the policy that this rule of construction is employed. Siegle v. Progressive Consumers Ins. Co., 819 So. 2d 732, 735 (Fla. 2002).

In Florida, insurance policies must be read as a whole. Fla. Stat. § 627.419 (1); see also Mathews v. Ranger Ins. Co., 281 So. 2d 345, 348 (Fla. 1973). Just because

9

an operative term is not defined, it does not necessarily mean that the term is ambiguous. Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 166 (Fla. 2003). "[T]erms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties – not a strained, forced or unrealistic construction." Siegle, 819 So. 2d at 736.

Plaintiffs contend that since other Florida courts have declared the exclusions at issue as unambiguous, this Court should as well. See e.g. Oak Ford Owners Assoc. v. Auto-Owners Insurance, Co., 510 F. Supp. 2d 812, 819 (M.D. Fla. 2007) ("the Court notes that Florida courts have held that exclusions 2j(5) and 2j(6) are not ambiguous and are therefore enforceable according to their terms"). American Cutting argues that the phrase "that particular part" that is used in the exclusions is ambiguous. American Cutting contends that the phrase could mean the particular area where work was contracted to be performed (the concrete) or it could encompass the broader area of the project (the entire flooring system and all component parts). (American Cutting Response, DE 59, p. 7, 9.)

Even though courts in other jurisdictions may have found the exclusion ambiguous, Florida courts have consistently held that the exclusionary language at issue is unambiguous. See e.g. Oak Ford Owners Assoc., 510 F. Supp.2d at 819. The Court agrees and will enforce the exclusions according to their terms. See also American Equity Ins. Co. v. Van Ginhoven, 788 So.2d 388, 390 - 391 (Fla. 5th DCA 2001); U.S. Fire Ins. Co. v. The Meridian of Palm Beach Condominium Association, Inc., 700 So.2d 161, 162 (Fla. 4th DCA 1997).

### E. Application of the Exclusions

#### 1. Exclusion j(5)

At the hearing on the Motion for Summary Judgment, American Cutting argued that there is a threshold question of whether a connection was established between the work done by American Cutting and the damages sought by Veranda. American Cutting posited that it could only be connected to the cutting of two cables and averred that this was a factual void that made application of the exclusions contingent upon a finding that American Cutting was connected with all of the damage. This argument is unpersuasive in light of the case law directing the Court to look to the most recent amended pleading and "[i]f the allegations in the . . . [counterclaim] state facts that bring the injury within the policy's coverage, the insurer must defend regardless of the merits of the lawsuit." Steinberg, 393 F.3d at 1230. The Court will not consider possible defenses to the counterclaim, rather, the Court must determine whether the exclusions apply to the claim for coverage based upon the allegations in the counterclaim.

Exclusion j(5) excludes coverage for property damage to, "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." (CGL Policy, DE 36-3 p. 74.)

The counterclaim outlines the activities undertaken by American Cutting on "that particular part of real property." American Cutting was on the property for the sole purpose of cutting through concrete and was not supposed to cut any steel or other cables. (Amended Counterclaim, DE 53-3, p. 1.) "That particular part of real property" should be taken and understood in the ordinary sense as the part of the project where

11

Amerisure was cutting through concrete, i.e., the areas of the floor where it was enlarging the holes. These floor areas had cable running through the concrete. Thus, "that particular part of real property" was the area of the concrete floor, including the embedded cable, where American Cutting was chipping concrete. This seems a reasonable, practical and sensible interpretation consistent with the intent of the parties -- not a strained, forced or unrealistic construction. Siegle, 819 So. 2d at 736.

Property damage is defined in the CGL policy as "[p]hysical injury to tangible property including all resulting loss of use of that property." (CGL policy, DE 36-3, p. 84.) Veranda alleges that American Cutting's actions resulted in property damage, specifically damage to the cable which caused Veranda to incur "the cost of repairing and replacing the cables; the cost of breaking through walls and floors to gain access to the cables that needed to be replaced and repaired, and the cost of overtime required by the delays caused by the severed cables." (Amended Counterclaim, DE 53-3, p. 2.) Putting all of the alleged facts together, exclusion j(5) applies because American Cutting was chipping concrete (performing operations) on areas of the concrete floor that included embedded cable (that particular part of real property) and damage to the cable (property damage) resulted from American Cutting's concrete chipping (operations). As a result, there is no coverage and no duty for Amerisure to defend American Cutting in the State Court Action.

The Counterclaim also alleges that American Cutting committed a violation of the Florida Building Code and created an unsafe condition when it cut the cables, which resulted in inspectors stopping work on the building being constructed. (Amended Counterclaim, DE 53-3, p. 2.) American Cutting allegedly violated the building code

when it created dangerous conditions to the public health, safety and welfare and should have known the violation existed. (Id. at p. 3.) The analysis is the same as above, American Cutting was working on the concrete floor areas which had embedded cables, damage to the cables arose out of its concrete chipping work on those areas and resulted in the violation of the Building Code. Therefore, there is no coverage.

The case is similar to <u>American Equity Ins. Co. v. Van Ginhoven</u>, 788 So.2d 388 (Fla. 5th DCA 2001), where a homeowner hired Van Ginhoven to make minor repairs to the surface of her swimming pool. 788 So.2d at 390. These repairs included cleaning the pool surface and replacing up to six tiles. <u>Id.</u> In order to do this, Van Ginhoven drained the pool and in the process the pool popped out of the ground resulting in damage to the pool, pump, heating system, deck, screen enclosure and surrounding landscaping and sprinkler system. <u>Id.</u> The Court addressed the same exclusions present in this CGL policy. Van Ginhoven argued that the exclusions only applied to the specific tiles and spot repairs, not the entire pool. <u>Id.</u> at 391. The Court disagreed and found that at the time the damage occurred, Van Ginhoven was not working or performing operations on the spots subject to repair, but was draining the entire pool. <u>Id.</u> So, damage to the entire pool was excluded from coverage but damage to other property that he was not working on such as the plumbing, electrical, deck work, patio etc. would be covered by the policy. <u>Id.</u>

Here, American Cutting was hired to chip concrete to enlarge concrete holes. This is analogous to Van Ginhoven being hired to perform a discrete repair on the pool. Just like Van Ginhoven had to drain the pool to complete the repair, American Cutting had to work on concrete floor areas that included embedded cable to chip the concrete.

13

American Cutting was working on the area of concrete that included embedded cable when the cable was damaged. This is similar to Van Ginhoven working on the entire pool when the pool was damaged. All of the damages alleged in the counterclaim against American Cutting deal with the damage to the cable. Consequently, damage to the cable is excluded under the policies. The damages for having to break through walls or floors or paying workers overtime are also excluded because the walls and floors were only damaged to gain access to the damaged cable and the workers were only paid overtime because of the delay stemming from the damaged cable. These areas were not independently damaged as a result of American Cutting's activities. Consequently, there are no genuine issues of material fact, and exclusion j(5) of the CGL Policy and exclusion m(5) in the Umbrella Policy apply to the insured's claim for coverage. Plaintiffs have no duty to defend and therefore no duty to indemnify American Cutting or any insured in the State Court Action.

### 2. Exclusion j(6)

Exclusion j(6) precludes coverage for "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." (CGL Policy, DE 36-3, p. 74.) Exclusion j(6) "does not apply to 'property damage' included in the 'products completed operations hazard.'" (Id.) American Cutting argues that exclusion j(6) is not applicable because it applies only to damage caused by incorrect performance and Plaintiffs have not established that American Cutting incorrectly performed its work. (American Cutting Response, DE 59, p. 15.) When evaluating a duty to defend and determining whether this exclusion applies, the correct or incorrect performance by American Cutting is not dispositive. The Court

14

must look to the State Court action to determine whether the facts alleged in the counterclaim bring the injury within the policy or whether the exclusion applies. The Court does not have to determine if American Cutting has a defense to the causes of action. See e.g. Steinberg, 393 F.3d at 1230.

"Your work" is defined as "work or operations performed by you or on your behalf. . ." (CGL Policy, DE 36-3, p. 84.) American Cutting's work on the project was to cut through concrete. (Amended Counterclaim, DE 53-3, p. 1 -2.) The counterclaim alleges that American Cutting was negligent and cut steel cables. (Id.) Therefore, Veranda had to repair and replace the cables. (Id. at p. 2.) Exclusion j(6) precludes coverage because cable had to be repaired and replaced as a result of American Cutting incorrectly performing its concrete cutting/chipping on the floor areas where the cables were embedded.

An illustrative case from outside this circuit is LISN, Inc. v. Commercial Union Ins. Co., 615 N.E.2d 650 (Ohio App. 9 Dist. 1992). LISN was hired to remove obsolete cable from the NYNEX facility. Id. at 627. Before beginning the removal process, the parties entered into a contract that specifically identified the difficulty of "mining" where there was both retired and working equipment and the parties identified that every effort would be made to prevent the occurrence of a service interruption. Id. at 627. In the process of mining the obsolete cable, an employee cut a functioning cable. Id. LISN sought a declaration as to the scope of coverage provided to it in the comprehensive general liability policy. Id. The court concluded that LISN's claim for coverage was excluded from the policy because LISN's work was to mine the obsolete cable without disturbing the functioning cable and to identify and protect the functioning cable. Id. at

15

630. As a result, "[w]hen LISN failed to protect the functioning cable and cut the functioning cable, LISN's work was incorrectly performed and the damage done to the functioning cable was excluded under the plain and unambiguous provisions of Section 2(j)(6) and VI(A)(2)(d)(iii)." Id.

Applying LISN to the present action, American Cutting knew that the cables were embedded in the concrete slab and that the cables were an integral part of the flooring. (Denunzio Deposition, DE 38-2, p. 6.) American Cutting's work was to cut/chip concrete and at no time while it was on the property was American Cutting supposed to cut any steel or other cables. (Amended Counterclaim, DE 53-3, p. 1.) American Cutting's responsibilities to chip only concrete is analogous to LISN's responsibility to cut only obsolete cable. Just as the live cable had nothing to do with removing the obsolete cable, except for the fact that they were located in the same area, the cable had nothing to do with the concrete chipping work except that it was embedded in the concrete floor. American Cutting allegedly breached its duty to only cut holes in the concrete and severed cable. (Amended Counterclaim, DE 53-3, p. 2.) LISN breached its duty to only remove obsolete cable and cut live cable. American Cutting's work was incorrectly performed and the damage done to the cable is therefore excluded under the CGL policy exclusion j(6) and exclusion m(6) in the Umbrella policy for the cost of repair and replacing the damaged cable.

American Cutting contends that even if exclusion j(6) does apply, its claim falls within the exception to exclusion j(6) for "property damage" included in the "products-completed operations hazard." (American Cutting Response, DE 59, p. 16.) The "products-completed operations hazard" is defined as including "all 'bodily injury' and

16

'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.'" (CGL Policy, DE 36-3, p. 83.) The "products-completed operations hazard" does not include "[w]ork that has not yet been completed or abandoned" and provides various definitions for determining when "your work" is deemed completed including "when all of the work called for in your contract has been completed." (CGL Policy, DE 36-3, p. 83.) "Your work" means "work or operations performed by you or on your behalf; and materials, parts or equipment furnished in connection with such work or operations." (Id. at 84.) The Court interprets this exception to exclusion j(6) as allowing an insured to recover consequential damages that arise out of his or her faulty workmanship after completion of the work.

    American Cutting maintains that it had completed all but one contract on the project before Veranda discovered the cable problem and as a result, the exclusion can apply only to damage caused when American Cutting was working on its last contract. (American Cutting Response, DE 59, p. 16.) Plaintiffs assert that this exception does not apply because the damage to the cables occurred while American Cutting was performing its work, and not later, after it had left the job site. (Motion for Summary Judgment, DE 35, p. 11-12.)

    American Cutting was hired to cut/chip plumbing access holes in the post-tension concrete floors during the construction of the Veranda Condominiums. (Amerisure Motion for Summary Judgment, DE 35, p. 3; American Cutting Response, DE 59, p. 3.) Carl Denunzio, President for American Cutting was asked, "And was your job - - did you supply quotes or did you have a contract, written contract or was it just all verbal?" (Denunzio Deposition, DE 57-2, p. 7.) In response, Mr. Denunzio

17

testified that it was verbal. (Id.) He also stated that American Cutting would get paid monthly and the means of billing the customer was the job tickets. (Id. at p. 12.) Job Ticket number 10414, dated March 14, 2007, indicates that American Cutting's job was incomplete. (Exhibit B to Denunzio Deposition, DE 38-2, p. 22.) Indeed, Mr. Denunzio confirmed that the job was not complete. (Denunzio Deposition, DE 57-2, p. 14.) Coscan notified American Cutting on March 19, 2007 that cables had been broken and the project was shut down by the Plantation Building department. (Exhibit E to Pender Deposition, DE 39-2 p. 20.) Coscan stated that American Cutting might be partially responsible for the damages. (Id.) The letter further stated that every effort was being made to inspect and correct the condition to allow work to resume as quicky as possibly. (Id.) Veranda later counterclaimed against American Cutting alleging that it had severed the cables and caused the shut down of the project. (Amended Counterclaim, DE 53-3.) The counterclaim specifically alleges that while on the property American Cutting caused the cables to be severed or damaged and this resulted in a violation of the Florida Building code which resulted in inspectors stopping work on the project. (Id. at p. 2.)

There is no dispute that American Cutting was hired to cut/chip plumbing access holes in the post tension concrete floors during the construction of the Veranda Condominiums. (Amerisure Motion for Summary Judgment, DE 35, p. 3; American Cutting Response, DE 59, p. 3.) There is also no dispute that American Cutting's job at the Veranda Condominiums was incomplete as of March 14, 2007, the last day American Cutting was on the job. (Id.) Additionally, the counterclaim alleges that the cables were severed while American Cutting was on the property. (Amended

Counterclaim, DE 53-3, p. 2.) Therefore, the property damage occurred prior to the completion of American Cutting's work on the project. The exception for "products-completed operations hazard" in exclusion j(6) does not apply. The Court rejects American Cutting's argument that it should construe only the last job on the project as incomplete. Rather, the Court construes American Cutting's work on the project as a whole and its work was not completed when the damage arose.

Another argument is that exclusion j(6) does not apply because the repair work involved adjacent work that was already completed. (Veranda Response, DE 51, p. 3.) Veranda argues that these other costs were related to the cables and the claim would be recoverable because American Cutting's work was limited to enlarging holes in concrete. (Id.) Plaintiffs counter that any cost or expense Veranda incurred is not covered because it is the result of cut cables as no other portion of the property was damaged. (Reply, DE 68, p. 2, 8.) The Court agrees. American Cutting was performing work on the concrete floor areas with embedded cable. The cost of repair and replacement of the cables includes gaining access to the cables in need of repair or replacement which necessitated breaking through walls and floors. There are no genuine issues of material fact. Plaintiffs have no duty to defend and therefore no duty to indemnify American Cutting or any insured in the State Court Action. There is no coverage under the CGL Policy or Umbrella Policy due to exclusion j(6) in the CGL Policy and exclusion m(6) in the Umbrella Policy.

### F. Other Issues Raised by Plaintiffs

Plaintiffs preemptively address other issues raised in Defendants' Affirmative Defenses such as estoppel and waiver for failure to comply with Fla. Stat. § 627.426.

(Motion for Summary Judgment, DE 35, p. 12 - 14.)  However, Defendants do not assert these issues as a basis for denying summary judgment.  Consequently, the Court will not address these defenses.

### III. CONCLUSION

In light of the foregoing it is **ORDERED AND ADJUDGED** that Amerisure Mutual Insurance Company's and Amerisure Insurance Company's Motion for Summary Declaratory Judgment [DE 35] is **GRANTED**.  Pursuant to the CGL policy exclusions j(5) and/or j(6) and Umbrella Policy exclusions m(5) and/or m(6), Amerisure has no duty to defend or indemnify American Cutting or any other insured as to the allegations contained in Veranda's counterclaim in the State Court Action.  The Court will enter a Final Judgment in accordance with this Order. The Clerk shall **CLOSE** this case and **DENY** all other motions as **MOOT**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida on this 17TH day of March, 2009.

JAMES I. COHN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All counsel of record on CM/ECF.